**Voelker, Ryan**

---

**From:** William V. DePaulo, Esq. [william.depaulo@gmail.com]
**Sent:** Tuesday, March 08, 2011 3:31 PM
**To:** Voelker, Ryan
**Cc:** McLusky, Robert; Fisher, Michael; Hurney, Jr., Thomas J.; Emch, Al; Grigsby, Kelly
**Subject:** Re: MAY NYE ET AL V BAYER CROPSCIENCE, LP -- DEPOSITIONS

Ryan -

We do not need formal notices, let me call you and work out the exact time for each..Maya Nye can lead on Thursday and the balance on the days you request....we are trying to get the second interrogatories done today...

Ramana Dhara is not available because he began work with the CDC on March 1, after the Feb 25 hearing date for which he was originally id'd. Varma is taking his slot.

We are working on the experts....they have all just been recently retained and need to read into the case...it may be that you will want to do some by video/phone or travel to them rather than await their appearance in WV.

Regards, Bill

On Tue, Mar 8, 2011 at 1:10 PM, Voelker, Ryan <rvoelker@jacksonkelly.com> wrote:
> Mr. DePaulo,
> I wanted to confirm with you that we wish to depose Ms. Giardina, Mr. Lewis, and Mr. Harman at our office on Thursday and Mr. Ferguson, Ms. Davis, and Ms. Willis at our office on Friday.  We would like to schedule the remaining plaintiffs you listed for either Saturday or Sunday.  If you would provide me with the best time for each plaintiff, I will notice them accordingly (if you a require a notice of deposition) and will arrange for court reporters, etc.  I would appreciate expedited responses to our second set of interrogatories for the plaintiffs at least one day in advance of their deposition.
> Thanks,
> Ryan

**From:** William V. DePaulo, Esq. [mailto:william.depaulo@gmail.com]
**Sent:** Tuesday, March 08, 2011 12:37 PM
**To:** Emch, Al
**Cc:** McLusky, Robert; Fisher, Michael; Hurney, Jr., Thomas J.; Voelker, Ryan

**Subject:** Re: MAY NYE ET AL V BAYER CROPSCIENCE, LP -- DEPOSITIONS

Al, please believe me when I tell you I'd like to but I am wondering if the judge -- with all the experts on both sides, and the issues he appears to be focusing on -- may suggest that some of these (Lewis Giardina and Harmon), and there are others in the same general pool, might be duplicative.

Three others, I just learned, are also available on Thursday or Friday all day, and candidly they are the most likely of the Institute folks to be called. They are Warne Ferguson, Sue Davis and Donna Willis. I am completing the responses to second interrogatories for these three now and will fwd this afternoon. Note all three or all six, as you wish, and we'll show up at the appointed times.  Bill

On Tue, Mar 8, 2011 at 12:30 PM, Emch, Al <AEMCH@jacksonkelly.com> wrote:
> **Do you intend to call them all?**
>
> ---
>
> **From:** William V. DePaulo, Esq. [mailto:william.depaulo@gmail.com]
> **Sent:** Tuesday, March 08, 2011 12:14 PM
> **To:** Emch, Al; McLusky, Robert; Fisher, Michael; Hurney, Jr., Thomas J.; Voelker, Ryan
> **Subject:** Re: MAY NYE ET AL V BAYER CROPSCIENCE, LP -- DEPOSITIONS
>
> Regarding depositions, three fact witnesses are available on Thursday at the following times:
> Denise Giardina, after 1 PM, Jim Lewis, after 1 PM, Mike Harmon, all day.  We are getting dates and times for others now; please advise if you want to schedule these three now.
>
>
>
> On Tue, Mar 8, 2011 at 12:08 PM, William V. DePaulo, Esq. <william.depaulo@gmail.com> wrote:
>> In the interest of expedition, and with the flexibility that has been granted to this process, I forward now, by email, the following responses to your third discovery request.
>>
>> As I informed Al some time ago, the change in dates for the p.i. hearing from Feb 25 to Mar 21 meant some of the experts we'd identified earlier were not available. We have identified some, but not all, of our experts, and are continuing to do that now.  We hope to complete the list this week and update you then.  As a practical matter, I do not believe depositions this week with our experts would glean useful information for the simple reason that they have not had an opportunity to review materials sufficiently.
>>
>> Separately, we are in the process of compiling responses from the 16 plaintiffs to your second discovery request and will forward later today:
>>
>> **INTERROGATORY 1:**

1. <u>Gerald Poje, PhD</u>. -- We have not yet received the opinions to which Dr. Poje will testify and cannot therefore produce today the requested information in subparts a through d of interrogatory 1. We have previously forwarded his resume, publications and litigation list, copies of which are attached again. Dr Poje will testify generally on the topic of the process safety risks associated the production of MIC by Bayer at Institute.

2. <u>Daya Varma, PhD</u>. -- We have not yet received the opinions to which Dr. Varma will testify and cannot therefore produce today the requested information in subparts a through d of interrogatory 1. We have requested but not yet received Dr. Varma's full cv and list of publications but do not possess it yet. We have attached two biographical sheets from McGill University's web page for your information in the interim. Dr. Varma advises that he has never testified in a court proceeding, and therefore there is no litigation list. Dr. Varma will testify generally as to the medical consequences including death and serious injury resulting from the dispersion of MIC over a given population in varying degrees of concentration, i.e., ppm.

3. <u>Dr. Raul Gupta</u> -- Dr. Gupta is the Kanawha-Charleston Health Department Director. I do not now possess a full cv, publication list and litigation list but will obtain and forward asap. He will testify that the best way to protect the citizens of Kanawha County is to adopt the Contra Costa County California ordinance. We will obtain the other items responsive to subparts a thru d and fwd asap.

4. <u>Pam Nixon</u> -- DEP Environmental Advocate. We will forward complete bio, pubs and litigation list upon receipt. We anticipate that Ms Nixon will testify that it would be better from the point of view of an environmental scientist to adopt the CSB recommendations prior to start up of the Bayer MIC unit. We will obtain a further statement of her views and the other items responsive to subparts a thru d and forward asap.

5. <u>Sanjay Verma</u> - Bhopal survivor and leader of organization of victims of Bhopal disaster, will testify on long term effects of MIC exposure on community. His cv, and any publications and litigation list, if any, will be forwarded shortly.

6. We are in the process of identifying and retaining, and consequently reserve the right to call, fact and/or expert testimony pertaining to evacuation plans, shelter in place viability, wind patterns and gas dispersion modeling, and will identify them as soon as possible.

## INTERROGATORY NO. 2:

1. <u>Sue Davis</u> - will testify as to the persistent fear resulting from a history of non-compliance by Bayer and her personal experience on the night of August 28, 2008. We are in the process of reviewing her medical records and will produce documents responsive to your request, and will promptly produce upon discovery of same.

2. <u>Donna Willis</u> - will testify as to the persistent fear resulting from a history of non-compliance by Bayer and her personal experience on the night of August 28, 2008. We are in the process of determining if there are documents responsive to your request, and will promptly produce upon discovery of same.

3. <u>Warne Ferguson</u> - will testify as to the persistent fear resulting from a history of non-compliance by Bayer and her personal experience on the night of August 28, 2008. He will also testify that he believes that his wife's death after August 28, 2008 was a result of the explosion on that night. We are in the process of determining if there are documents responsive to your request, and will promptly produce upon discovery of same.

4. <u>Mike Harman</u> - will testify as to his personal injuries (very rare blisters on the cornea of both eyes) as a result of Bayer's operations and fear as a result of living in the area adjacent to Bayer's plant. He will also testify that Bayer's release of toxins is continuing, and causes him pain and suffering, burning in his eyes, skin problems and adverse effects on his respiratory system which cause him to have difficulty breathing.

5. Katherine Davis presently resides in Mesa, Arizona. Formerly Ms. Davis resided in Institute, WV. Davis left the Institute area in 2003, having not completed her education at West Virginia State University (WVSU): "I left and didn't graduate because I just couldn't stand being there any longer. I just could not stay there long enough to graduate." Davis left shortly after walking through a "green cloud' on the university campus one evening following class. Within a few hours, she was experiencing intense chest pain and thought she was going to die. The following day, she awoke slightly red and swollen and collapsed on her kitchen floor. Her mother called an ambulance which took her to Putnam County Hospital. Davis spent the following week in the cardiac unit, where she underwent testing. Davis believes she went through a cloud of naphthalene, negligently and/or recklessly released by Bayer. There is an alarm at the fire station that goes off at noon the last Wednesday of every month, which is used in case of a chemical emergency to warn residents.

That alarm causes fear in Davis because she has to stop and think: "Is it the last Wednesday?" When the alarm goes off, it puts her in instant survival mode.

5. Rev. Jim Lewis - will testify regarding the increase in his counseling of members of his congregation following the August 28, 2008 explosion.

6. Denise Giardina - will testify as to her experience at WVSU during 1993 explosion and continuing anxiety thereafter.

7. Maya Nye - will testify as to her experience at WVSU during 1993 explosion and continuing anxiety thereafter.

8. Donald Lorenzo - a hostile witness will be interrogated regarding his inspection of the Institute plant prior to issuing his reports attached to Opposition to Preliminary Injunction.

9. Karen Myers - a hostile witness will be interrogated about her Facilitated Self Audits and other work for Bayer prior to and after August 28, 2008.

10. Steven Smythe - a hostile witness will be interrogated regarding the alternative technologies Bayer considered and rejected for production of MIC

REQUEST FOR PRODUCTION 1:

The only documents made available to any expert to date are the pleadings and exhibits in this litigation, all of which have been previously produced for Defendant.

REQUEST FOR PRODUCTION 2:

As phrased the request is overbroad. Without waiving the objection we are in the process of review medical and other records that may be responsive and will forward later today as that review proceeds.

REQUEST FOR PRODUCTION 3:

We are in the process of collecting the medical records responsive to this request, and will produce some later today and others shortly as they become available.

REQUEST FOR PRODUCTION 4:

Without limitation to the use of additional materials at trial, which we will produce as they become available, we direct your attention to the following findings of the Chemical Safety Board.

CSB REPORT AT PAGE 10 - MIC air monitoring devices in and near the Methomyl-Larvin unit were not operational the night of the incident. Only two fenceline air monitors were operational, but they were more than 800 feet away and not located downwind of the smoke; in addition these fenceline monitors were only designed to detect carbon monoxide, hydrogen sulfide, flammable gas and oxygen.

CSB REPORT AT PAGE 45 - After the Institute fire department chief made the initial contact, the Bayer IC advised him that based on air monitoring information, "everything [was] being consumed in the fire" and that a shelter-in-place was not necessary. However, when the Kanawha County Sheriff arrived, he noticed an acrid smell in the air and not knowing the source, felt that he and his deputies might be at risk; thus, he ordered his deputies and state police to relocate to the Shawnee Park EOC, the location so designated in pre-planning exercises.

CSB REPORT AT PAGES 49-50 - At the time of the incident, the two AreaRae® fence line air monitors Continuous air monitors were located in and around the production units to detect fugitive leaks in process equipment were positioned on the east end of the plant and on the west riverbank to detect concentrations of airborne chemical contaminants and alert facility occupants if air concentrations exceeded safe levels and had traveled beyond plant boundaries. The CSB investigators examined the monitor data and determined that the fence line monitors did not detect hazardous concentrations of the chemicals sampled. Another AreaRae system monitor recorded atmospheric winds, temperature, and barometric pressure.

However, in May 2008, the analyzer malfunctioned, causing spurious alarms. Although technicians
investigated, they had not resolved the problem before the August methomyl unit startup. The CSB
learned that the system had not been repaired and restarted even though the MIC storage tank had or leaks resulting from process upsets. The Methomyl-Larvin unit had localized MIC sample points connected to an analyzer, which Bayer installed in March 2006 to continuously sample and record MIC concentrations at 2-minute intervals. If concentrations exceeded 1.0 ppm, the system was designed to activate a visual alarm display in a room on the second floor of the Methomyl-Larvin control building. On the night of the incident, the personnel in the Bayer EOC were unaware that the monitoring system was not active, therefore they assumed it would alarm if it detected airborne MIC or other detectable chemicals during the incident response. They had no way of knowing if toxic vapors from chemicals used in the methomyl

unit were escaping into the air. The MIC production unit, located about 1,800 feet from the Methomyl-Larvin unit, had a similar MIC air monitoring system with 16 stationary sample points. The analyzer recorded the results at 2-minute intervals. This analyzer was operational on the night of the incident but did not detect any chemicals including MIC during or after the incident.

CSB REPORT AT 74-75 --

Fenceline air monitors are often relied on to determine if chemicals released from a plant enter the
community. The locations of the monitors, as well as their limited chemical sensitivity, often make
release determinations difficult. On the night of the incident, two property fenceline monitoring
devices were operating, one on the east side and one on the west side of the facility. The closest
monitor was more than 800 feet from the methomyl unit and would be effective only if it were
downwind of a release. The monitors were configured to detect chlorine, carbon monoxide, methane, and oxygen. Each monitor contained a 10.6 eV (electron volt) lamp and a VOC sensor capable of picking up chemical compounds only within a certain range of ionization energies. Because the VOC sensor can detect several different chemical compounds, it is useful only in estimating a concentration if the released material is suspected and possesses an ionization energy in the detectable range. The AreaRae monitor, which was used the night of the incident, could not detect specific compounds such as methomyl or some of its intermediates. Laboratory analyses of air or swipe samples were the only sampling methods available to determine if methomyl was released, but those tests were performed days later. The fence line monitors were also unreliable because they could not detect buoyant gas releases unless strong wind currents drove the gas back down to the detector locations. Weather conditions the night of the explosion, including wind direction and velocity, were unfavorable for proper detection of any toxic or flammable gas by either fence line monitor.

3.10.2 Unit Air Monitors
The air sample analyzer collected and analyzed samples at 16 locations in the Methomyl-Larvin unit and near the MIC day tank at 2-minute intervals. The analytical results were recorded in a data historian and any concentrations exceeding 1.0 ppm triggered a visual alarm notification on a display panel on the second floor of the Methomyl/Larvin control building and at the board operator's console. The analyzer used a fixed filter photometer consisting of an infrared radiation (IR) source to absorb and detect the concentration of MIC within a range of 0 to 10 ppm.
In May 2008, the analyzer malfunctioned and reported erroneous concentrations in excess of 1 ppm and failed to activate control building alarms. Two weeks before the August incident, the monitor data logging system stopped recording for an unknown

reason. The analyzer manufacturer worked with Bayer to resolve the problem, but the analyzer was not repaired and returned to service before the incident. Unknown to EOC personnel the monitor was not operating the night of the incident. Assuming it was working, they concluded that the explosion did not cause an MIC release, or if MIC had been released, it was being consumed in the fires. The PSSR for the residue treater, completed prior to the methomyl restart, did not specifically list MIC analyzer operation as a requirement for startup or operation.

William V. DePaulo, Esq.
179 Summers Street, Suite 232
Charleston, WV 25301-2163
Tel 304-342-5588
Fax 304-342-5505
william.depaulo@gmail.com
www.passeggiata.com

--
William V. DePaulo, Esq.
179 Summers Street, Suite 232
Charleston, WV 25301-2163
Tel 304-342-5588
Fax 304-342-5505
william.depaulo@gmail.com
www.passeggiata.com

--
William V. DePaulo, Esq.
179 Summers Street, Suite 232
Charleston, WV 25301-2163
Tel 304-342-5588
Fax 304-342-5505

william.depaulo@gmail.com
www.passeggiata.com


--
William V. DePaulo, Esq.
179 Summers Street, Suite 232
Charleston, WV 25301-2163
Tel 304-342-5588
Fax 304-342-5505
william.depaulo@gmail.com
www.passeggiata.com